ESTATE OF Robert W. ADAMS,
Plaintiff,
v.
UNITED STATES of America,
Defendant.

No. 80–C–249–E.

United States District Court,
N.D. Oklahoma.

Oct. 8, 1981.

James G. Davidson, Tulsa, Okl., for plaintiff.

Shawna L. Brown, Tax Div., Dept. of Justice, Dallas, Tex., Hubert Bryant, U.S. Atty., Tulsa, Okl., for defendant.

ORDER

ELLISON, District Judge.

This matter is now before the Court for dispositive ruling on the parties' cross-motions for summary judgment. The operative facts are not in dispute, having been stipulated to by the parties in the Pretrial Order filed herein on March 31, 1981. The matter is, therefore, appropriate for resolution by motions for summary judgment, Rule 56, Fed.R.Civ.Pro. The facts stipulated to are as follows:

1. This action arises under the law of the United States providing for internal revenue.

2. The Estate of Robert W. Adams is a legal entity under the laws of the State of Oklahoma, originating after the death of Robert W. Adams. The coexecutors of the estate are Edward John Adams and Oliver Black Adams.

3. Robert W. Adams died on the 3rd day of May, 1974, and the coexecutors of the estate timely filed a U.S. Estate Tax Return (Form 706) on February 3, 1975. The estate elected to pay the estate tax due in ten equal installments pursuant to Section 6166 of the Internal Revenue Code of 1954 (26 U.S.C.), as in effect on February 3, 1975. That election was approved by the Internal Revenue Service.

4. The estate tax return reflected a total tax liability of $316,327, and one-tenth of that amount, or $31,632, was paid with the returns. The plaintiff paid the installments due on February

3, 1976, and February 3, 1977, and the interest due thereon. Those amounts of tax and interest are not at issue in this suit.

5. On February 7, 1978, the plaintiff paid the tax installment due February 3, 1978, in the amount of $31,000. The plaintiff paid the interest assessed on said installment in two payments, $8,680 and $6,516.44, on February 7, 1978, and July 12, 1978, respectively.

6. On February 5, 1979, the plaintiff paid the installment due February 3, 1979, in the amount of $31,000 and also paid the interest assessed thereon in the amount of $11,160.

7. On February 1, 1980, the plaintiff paid the installment due on February 3, 1980, in the amount of $31,000 and also paid the interest assessed thereon in the amount of $9,391.30.

8. The plaintiff timely filed a Claim for Refund (Form 843) for interest in the amount of $13,366.87 on February 1, 1980.

9. On March 12, 1980, the Internal Revenue Service disallowed the claim of the plaintiff by a certified letter.

10. All payments made by the plaintiff in the years 1978, 1979, and 1980 were timely made.

11. The following portions of the interest paid by the estate in 1978, 1979, and 1980 represent interest assessed at a rate in excess of 4 percent:
1978—$6,516.44 (paid July 7, 1978)
1979—$3,720 (paid February 5, 1979)
1980—$3,130.43 (paid February 1, 1980)
These amounts of interest, totaling $13,366.87 constitute the amount in issue in this case.

There is only one question of law before the Court, whether an estate which elected to pay its estate tax in ten annual installments must pay interest in excess of 4 percent on the installments paid in 1978, 1979, and 1980. The matter revolves around the construction of statutes and their amendments, specifically 26 U.S.C. § 6166, 26 U.S.C. § 6601 (Internal Revenue Code of 1954), and Public Law 94–455, § 2004.

At the time of the death of Robert W. Adams, the existing laws provided that qualifying estates could elect a ten-year installment payment method, 26 U.S.C. § 6166, and that the interest on such deferred payments was to be computed at a rate of 4 percent rather than the general 6 percent rate then in effect, 26 U.S.C. § 6601(b). At the time of the estate's election, therefore, the applicable interest rate on the deferred payments was 4 percent. Since the estate tax return was filed on February 3, 1975, however, no payment on the estate tax or on the applicable interest was due until February of 1976.

The applicable interest rate, however, was changed by the Act of January 3, 1975, Pub.L. No. 93–625, 88 Stat. 2108, effective July 1, 1975. Section 7 of that Act, subpart (b)(1), provided as follows:

(b) TERMINATION OF REDUCED INTEREST RATE IN CERTAIN CASES.—

(1) CERTAIN EXTENSIONS OF TIME.—Section 6601 is amended by striking out subsection (b) (relating to extensions of time in the case of certain estates) and subsection (j) (relating to extensions of time in the case of certain expropriation leases), and by redesignating subsections (c). (d), (e), (f), (g), (h), (i), (k), and (l) as subsections (b), (c), (d), (e), (f), (g), (h), (i), and (j) respectively.

As already noted, the effective date of this amendment was July 1, 1975, as provided for in Section 7(c) of the Act:

(e) EFFECTIVE DATE.—The amendments made by this section shall take effect on July 1, 1975, and apply to amounts outstanding on such date or arising thereafter.

The Court need not resort to anything more than the plain language of the Act in arriving at the conclusion that as of July 1, 1975, the 4 percent interest rate was no longer applicable to the deferred tax payments of the Plaintiff estate, since it cannot be disputed that the amounts in question were "outstanding" on that date.

Plaintiff argues, however, that 26 U.S.C. § 6601, as amended by the Act of October 4, 1976, Public Law No. 94–455, Section 2004 (Tax Reform Act of 1976), is applicable to the payments made by reason of the estate's election under 26 U.S.C. § 6166, and that Plaintiff is, thereby, entitled to the 4 percent interest rate, and therefore to a refund in the amount of $13,366.87.

Section 2004 of the Tax Reform Act of 1976 (90 Stat. 1520 at 1862–1872) subpart (a), amends the Revenue Code by redesignating section 6166 as section 6166A, and inserting a new section 6166 following section 6165. This new section 6166 principally provides for a 15-year deferment as an alternate extension of time to the election provided for in section 6166A. Subpart (b) of section 2004 of the Act provides as follows:

> (b) 4–PERCENT INTEREST RATE.— Section 6601 (relating to interest on underpayment, nonpayment, or extension of time for payment of tax) is amended by redesignating subsection (j) as subsection (k) and by inserting after subsection (i) the following new subsection:
>
> "(j) 4–PERCENT RATE ON CERTAIN PORTION OF ESTATE TAX EXTENDED UNDER SECTION 6166.—
>
> "(1) IN GENERAL.—If the time for payment of an amount of tax imposed by chapter 11 is extended as provided in section 6166, interest on the 4-percent portion of such amount shall (in lieu of the annual rate provided by subsection (a)) be paid at the rate of 4 percent. For purposes of this subsection, the amount of any deficiency which is prorated to installments payable under section 6166 shall be treated as an amount of tax payable in installments under such section.
>
> "(2) 4–PERCENT PORTION.—For purposes of this subsection, the term '4-percent portion' means the lesser of—
>
> "(A) $345,800 reduced by the amount of the credit allowable under section 2010(a); or
>
> "(B) the amount of the tax imposed by chapter 11 which is extended as provided in section 6166.
>
> "(3) TREATMENT OF PAYMENTS. —If the amount of tax imposed by chapter 11 which is extended as provided in section 6166 exceeds the 4-percent portion, any payment of a portion of such amount shall, for purposes of computing interest for periods after such payment, be treated as reducing the 4-percent portion by an amount which bears the same ratio to the amount of such payment as the amount of the 4-percent portion (determined without regard to this paragraph) bears to the amount of the tax which is extended as provided in section 6166."

90 Stat. at 1867. Finally, subpart (g) of section 2004 of the Act provides for the effective date of the amendments:

> (g) EFFECTIVE DATE.—The amendments made by this section shall apply to the estates of decedents dying after December 31, 1976.

It is the estate's position herein that the effective date provision relates to the new 15-year alternative extension, and not to the effective date of the amendment of section 6601 of the Code or to the redesignation of section 6166 of the Code as section 6166A.

The starting point in every judicial effort in statutory construction, is, of course, the language of the statute itself, which the Court must give effect to if it is unambiguous, *see, e.g., Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). If, however, the words of the statute, when given their plain meaning, would lead to absurd or unreasonable results at variance with the policy embodied in the whole of the legislative enactment, the Court may look to extrinsic materials in construing the statute, *e.g., Steel Workers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); *United States v. American Trucking Ass'n,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

The Court has reviewed the legislative history of Public Law No. 93–625, U.S.Code Cong. & Admin.News, 93rd Cong., Second Sess. 1974 beginning at 7478, and the legislative history of Public Law No. 94–455, U.S.Code Cong. & Admin.News, 94th Cong., Second Sess. 1976 beginning at 2897.

Senate Report No. 93–1357, relating to Public Law No. 93–625, in discussing the reasons for a change in the interest rate from 4 percent, states:

> In those cases where the 4-percent interest rate applies, although an extension of time to pay a tax may be appropriate in certain cases in order to avoid unnecessary hardship, the committee sees no sound reason to permit some taxpayers to pay interest at a lower rate than other taxpayers are required to pay on underpayments of tax. Relief from the hardship of paying taxes in a lump sum should not also mean that the interest rate should be reduced if payments are made in installments. This is particularly so if a closely held business owned by an estate, or a business which has recovered an expropriation loss, is or can be earning a significantly higher return on the tax money which it presently can, in effect, borrow from the Government at 4 percent.

U.S.Code Cong. & Admin.News, 93rd Cong., Second Sess. at 7496.

House Conference Report No. 93–1642, relating to the Senate amendments, discusses the increase in interest rate provided for in section 7 of the Senate amendment, but contains no reference to the increase in the 4 percent interest rate, U.S.Code Cong. & Admin.News, 93rd Cong., Second Sess., at 7515.

House Report No. 94–1380 relating to Public Law No. 94–455 (U.S.Code Cong. & Admin.News, 94th Cong., Second Sess., beginning at 3356), states in the "Summary" section:

> 6. The bill liberalizes the present requirements that must be met in order to obtain an extension of time for the payment of estate tax and extends the period over which payment of estate tax attrib-

utable to a closely held business can be made from 10 to 15 years. Under this provision, the executor can elect to defer payment of the entire estate tax for a period of 5 years and, thereafter, pay the tax in installments over the next 10 years. In addition, the interest rate on the estate tax attributable to the first $1 million of farm or other closely held business property is to be decreased from its current rate of 7 percent to a permanent rate of 4 percent.

Id. at 3358. The same House Report goes on to discuss the 1975 amendments which had eliminated the 4 percent interest rate, the reasons for the changes contained in the 1976 Act, and a brief explanation of the Act's provisions:

> The amendments made in 1975 also eliminated the special 4 percent rate. At that time, it was noted that
>
> "although an extension of time to pay a tax may be appropriate in certain cases in order to avoid unnecessary hardships, the committee sees no sound reason to permit some taxpayers to pay interest at a lower rate than other taxpayers are required to pay on underpayments of tax. Relief from the hardship of paying taxes in a lump sum should not also mean that the interest rate should be reduced if payments are made in installments. This is particularly so if a closely held business owned by an estate ... is or can be earning a significantly higher return on the tax money which it presently can, in effect, borrow from the Government at 4 percent." (S.Rep. No. 93–1357, 93rd Cong., 2d Sess., 19–20).
>
> *Reasons for change*
>
> The present provisions have proved inadequate to deal with the liquidity problems experienced by estates in which a substantial portion of the assets consist of a closely held business or other illiquid assets. In many cases, the executor is forced to sell a decedent's interest in a farm or other closely held business in order to pay the estate tax. This may occur even when the estate qualifies for

 

the 10-year extension provided for closely held businesses. In these cases, it may take several years before a business can regain sufficient financial strength to generate enough cash to pay estate taxes after the loss of one of its principal owners. Moreover, some businesses are not so profitable that they yield enough to pay both the estate tax and interest especially if the interest rate is high.

\*    \*    \*    \*    \*    \*

Your committee's bill provides that a special 4-percent interest rate is allowed on the estate tax attributable to the first $1 million of farm or other closely held business property, and interest on amounts of estate tax in excess of this amount will bear interest at the regular rate for interest on deferred payments (currently 7%).

*Id.* at 3384–3386. It is clear, from an examination of House Report 94–1380, that the 1975 increase in the 4 percent interest rate was found to be harmful to those estates in which the assets consisted substantially of illiquid assets, such as a closely held business, and that the intent was to relieve the problem experienced by such estates by a lowered interest rate.

It is also clear, however, that the intent was for such changes to apply to the estates of decedents dying after December 31, 1976, for House Report 94–1380, Section IV, subpart D, which contains the language just quoted, ends by stating:

> The amendments made by this section apply to the estates of decedents dying after December 31, 1976.

U.S.Code Cong. & Admin.News, 94th Cong., Second Sess. at 3390.

Plaintiff estate is not entitled to the benefits of Section 2004 of Public Law No. 94–455, 90 Stat. 1520 (Tax Reform Act of 1976), since decedent's death occurred prior to December 31, 1976.

It is the Court's conclusion, upon its review of the statutes and legislative history, that 26 U.S.C. § 6601 is not applicable to the payments made under the Plaintiff's Section 6166 election, and that Plaintiff is not entitled to recover interest paid in ex-

cess of the rate of 4 percent. Summary judgment is, therefore, appropriate in this case in favor of Defendant and against Plaintiff.

IT IS THEREFORE ORDERED that Plaintiff's motion for summary judgment be, and the same hereby is, denied;

IT IS FURTHER ORDERED that Defendant's motion for summary judgment be, and the same hereby is, granted.

It is So Ordered this 8th day of October, 1981.